## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
## JACKSON DIVISION

VICKIE MCNEILL                                              PLAINTIFF

VS.                                        CIVIL ACTION NO. 3:06cv74 DPJ-JCS

CITY OF CANTON, MISSISSIPPI ET AL.                         DEFENDANTS

### MEMORANDUM OPINION AND ORDER

This employment discrimination/retaliation case is before the Court on the motion for

summary judgment of Defendants City of Canton, Mississippi; Fred Esco, individually and in his

capacity as Mayor of the City of Canton, Mississippi; and Robert Winn, individually and in his

capacity as Chief of the City of Canton Police Department.  Plaintiff has responded in opposition

and has filed a motion for a additional discovery under Rule 56(f).  Having considered the

memoranda and submissions of the parties, along with the pertinent authorities, the Court finds

that Defendants' motion for summary judgment should be granted, and Plaintiff's motion should

be denied.

I.       **Facts/Procedural History**

Plaintiff Vickie McNeill ("McNeill") began her employment with the Canton Police

Department in 1978, eventually rising to the rank of Assistant Chief of Police.  In February of

2000, during her continued tenure with the police department, McNeill filed a successful sexual

harassment and retaliation suit against the City of Canton ("the City").  On December 16, 2003,

then Police Chief Luke Gordon resigned, and McNeill was appointed interim Chief while the

City advertised and filled the vacancy.  In early 2004, Mayor Fred Esco ("Esco") and the City of

1

Canton's Board of Aldermen designated a selection committee to search for and recommend a candidate for the Chief of Police position. Although there were many applicants for the position, including two male officers from the Canton Police Department, Plaintiff was the only female to apply. The selection committee then narrowed this original pool by reviewing the candidates' written applications and selecting approximately six applicants for an interview. McNeill was the only employee of the Canton Police Depart to receive an interview, but the selection committee ultimately recommended that the City hire Robert Winn ("Winn"). The Board of Aldermen adopted the committee's recommendation in April 2004, and Winn became Chief of Police for the City of Canton. McNeill continued to serve as Assistant Chief of Police for the City, along with Assistant Chief Bracey Coleman.

On September 24, 2004, Plaintiff filed a Charge of Discrimination (Charge No. 131200406572) with the Equal Employment Opportunity Commission (EEOC), alleging that the decision to hire Winn was because of sex based discrimination and retaliation. The Department of Justice (DOJ) issued a right to sue letter for this claim on November 9, 2005.

In July of 2005, Chief Winn appeared before the Board of Aldermen and recommended that they terminate McNeill's employment because of her refusal to work cooperatively with Winn and others, violation of the City's policies and procedures, and failure to perform her duties. The Board adopted Winn's recommendation and terminated Plaintiff's employment on July 5, 2005. This led to Plaintiff's second Charge of Discrimination (Charge No. 131-2005-04490) with the EEOC on July 6, 2005, in which she alleged that the City terminated her employment in retaliation for filing the 2004 charge of discrimination with the EEOC. It is unclear whether Plaintiff ever received a right to sue letter for her second EEOC complaint (No.

131-2005-04490), though Plaintiff has produced a letter mailed to her by the EEOC regarding this charge on September 26, 2005, which states:  "The [EEOC] has received your request for a Notice of Right to Sue in the above referenced charge.  Your request has been forwarded to the [DOJ] for action.  That Agency will act on your request and issue the Notice directly to you."

Finally, on February 3, 2006, Plaintiff filed the instant suit, alleging gender discrimination and retaliation, substantive and procedural due process violations, and intentional and negligent infliction of emotional distress.  Defendants have moved for summary judgment on each of Plaintiff's claims.

## II.   Summary Judgment Standard

Summary judgment is warranted under Rule 56(c) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law.  The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact.  *Id.* at 323.  The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial."  *Id.* at 324.  Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial.  *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*,

10 F.3d 1093, 1097 (5th Cir. 1997); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  Instead, when the movant shows the absence of a genuine issue of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995).  A simple plea for a jury trial on the bare assertion that there are genuine issues of material fact is not a sufficient response to a motion for summary judgment.  *F.D.I.C. v. Brewer*, 823 F. Supp. 1341, 1347 (S.D. Miss. 1993) (citing *Washington v. Armstrong World Indus., Inc.*, 839 F.3d 1121, 1122–23 (5th Cir. 1988)).

In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075.  When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 150 (2000).

"In an employment discrimination case, the Court should focus on whether a genuine issue exists regarding whether the defendant intentionally discriminated against the plaintiff. Unsubstantiated assertions are not competent summary judgment evidence.  Nor are conjecture or speculation adequate to satisfy the nonmovant's burden." *Parker v. Tyson Foods, Inc.*, No. 5:05-cv-209, 2007 WL 2021928, at *1 (S.D. Miss. July 9, 2007) (internal citations omitted). Furthermore,

> [t]he Fifth Circuit has held that an employee's self-serving generalized testimony stating his subjective belief that discrimination occurred is simply insufficient to support a jury verdict in plaintiff's favor. [Thus], the Fifth Circuit has held that summary judgment may be appropriate in cases where elusive concepts such as

motive or intent are at issue, if the nonmoving party rests merely upon conclusory allegations, improbable inferences and unsupported speculation.

*Id.* (internal citations and quotations omitted).

## III.    Analysis

### A.    Motion for Summary Judgment

#### 1.    *Title VII/§ 1983 Claims*[1]

Plaintiff alleges three instances in which Defendants violated Title VII/§ 1983 by engaging in discriminatory or retaliatory employment practices.  First, Plaintiff asserts that the City hired Defendant Winn for the Chief of Police position rather than Plaintiff due to improper gender discrimination and retaliatory animus.  Next, Plaintiff contends that Defendants further retaliated against her by demoting her within her department.  Finally, Plaintiff maintains that Defendants terminated her employment as retaliation for engaging in protected activity.

---

[1] In their motion, Defendants seek dismissal of Plaintiff's Title VII claims against individual Defendants Winn and Esco.  Defendants correctly point out that "[i]ndividuals are not liable under Title VII in either their individual or official capacities."  *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 382 n.1 (5th Cir. 2003) (citing *Smith v. Amedisys Inc.*, 298 F.3d 434, 448–49 (5th Cir. 2002)).  Plaintiff contends, however, that her claims against Winn and Esco are brought pursuant to 42 U.S.C. § 1983, not Title VII, and her Complaint supports this argument.  Accordingly, the Court will consider Plaintiff's claims against individual Defendants Winn and Esco under § 1983.  The Court notes, however, that "[s]ection 1983 and [T]itle VII are parallel causes of action.  Accordingly, the inquiry into intentional discrimination is essentially the same for individual actions brought under sections 1981 and 1983, and Title VII."  *Lauderdale v. Tex. Dep't of Criminal Justice, Institutional Div.*, No. 06-41636, 2007 WL 4465204, at *6 (5th Cir. Dec. 21, 2007) (internal citations and quotations omitted).  Thus, the Court will apply the same analysis to Plaintiff's discrimination and retaliation claims against all Defendants.  *See Merwine v. Bd. of Trs. for State Insts. of Higher Learning*, 754 F.2d 631, 636 n.3 (5th Cir. 1985) ("When a § 1983 claim is used as a parallel to a Title VII claim under a given set of facts, the elements required to be established for each claim are deemed the same under both statutes.  Accordingly, this Circuit has held that the standards enunciated in *McDonnell Douglas Corp*. . . . for establishing a prima facie case in a Title VII employment discrimination action present a logical and appealing application in . . . 1983 cases." (internal citations and quotations omitted)).

Title VII of the Civil Rights Act of 1964 prohibits discrimination in employment

decisions on the basis of "race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1)

(2003).  Both discrimination and retaliation claims under Title VII are analyzed using the same

general, analytical framework.  *Rios v. Rossotti*, 252 F.3d 375, 379 (5th Cir. 2001) (citing

*Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998)) ("The framework for

analyzing a retaliation claim is the same as that used in the employment discrimination

context.").

> A plaintiff can prove a claim of intentional discrimination [or retaliation] by either
> direct or circumstantial evidence.  Absent direct evidence of discriminatory intent,
> as is typically the case, proof via circumstantial evidence is assembled using the
> framework set forth in the seminal case of *McDonnell Douglas Corp. v. Green* . . .
> .  First, the plaintiff must establish a prima facie case of discrimination.  Second, the
> employer must respond with a legitimate, nondiscriminatory reason for its decision.
> This burden on the employer is only one of production, not persuasion, involving no
> credibility assessments.  Third, if the employer carries its burden, the mandatory
> inference of discrimination created by the plaintiff's prima facie case drops out of the
> picture and the fact finder must decide the ultimate question: whether [the] plaintiff
> has proven [intentional discrimination].  In making this showing, the plaintiff can
> rely on evidence that the employer's reasons were a pretext for unlawful
> discrimination. [T]he trier of fact may still consider the evidence establishing the
> plaintiff's prima facie case and inferences properly drawn therefrom . . . on the issue
> of whether the defendant's explanation is pretextual. . . . Thus, a plaintiff's prima
> facie case, combined with sufficient evidence to find that the employer's asserted
> justification is false, may permit the trier of fact to conclude that the employe[r]
> unlawfully discriminated.

*Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000) (internal citations and

quotations omitted).  Furthermore, "[a] plaintiff may establish pretext by showing that a

discriminatory motive more likely motivated her employer's decision, such as through evidence

of disparate treatment, or that [her employer's] explanation is unworthy of credence."  *Wallace v.*

*Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001) (citation and internal quotations

omitted).  With this general framework in mind, the Court will consider each of Plaintiff's Title VII/§ 1983 claims.

                a.       Discrimination and Retaliation Regarding Non-selection for the Chief of Police Position[2]

                      i.      Sex Based Discrimination

To state a prima facie case of discriminatory failure to promote, a plaintiff must establish: "(1) [s]he belongs to a protected class; (2) [s]he applied for and was qualified for a position for which applications were being sought; (3) [s]he was rejected; and (4) a person outside of [her] protected class was hired for the position." *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 412 (5th Cir. 2007).  For purposes of the instant motion, Defendants have assumed the existence of prima facie case of discrimination.  Thus, the burden shifts to Defendants to come forward with a legitimate, nondiscriminatory reason for their failure to promote Plaintiff to the Chief of Police position.

Here, Defendants have asserted their desire to hire an outsider as the legitimate, nondiscriminatory reason for their decision.  Defendants maintain that at the time of their selection, "[t]he public's perception of the [Canton Police Department] and its leadership was poor" due to the arrest and incarceration of several Canton Police Officers during the few years preceding Chief Gordon's resignation.  Defendants' Memorandum in Support of Their Motion for Summary Judgment ("Defendants' Motion") at 11.  Thus, Defendants claim that "[t]he [selection] committee did not believe that anyone associated with the department would be able

---

     [2]This claim would not apply to Defendant Winn who was the prevailing candidate in the disputed selection.

to make the changes needed to move the [Canton Police Department] to the next level." *Id.* As a result, the City hired Defendant Winn, an outsider.

Plaintiff argues in response that Defendants failed to proffer a legitimate, nondiscriminatory reason for their decision. However, Plaintiff confirmed the department's image problem during her deposition; and the desire to hire an outsider is a legitimate, nondiscriminatory justification for a defendant's failure to promote a particular candidate. *See Hayatavoudi v. Univ. of La. Sys. Bd. of Trs.*, 240 F.3d 1073, 2000 WL 1835143, at *4 (5th Cir. 2000) (unpublished table decision). Finally, Defendants' burden at this stage of the analysis is "one of production, not persuasion, involving no credibility assessments." *Russell*, 235 F.3d at 222. Defendants have met their burden, so the burden shifts back to Plaintiff to demonstrate that Defendants' stated reason for her non-selection was actually pretext for discrimination.

> At the pretext stage, a
>
> plaintiff can defeat summary judgment if the evidence, in its totality, creates a fact issue as to whether the employer's asserted reasons are false or has otherwise created a reasonable inference that [gender] was a determinative factor in the actions of which plaintiff complains. However, the plaintiff's assertion of pretext must rest upon sufficiently specific, substantive reasons beyond self-serving, subjective or speculative allegations.

*Murphree*, 226 F. Supp. 2d at 835 (internal citations and quotations omitted). To establish pretext in the context of her failure to promote claim, Plaintiff offers the following evidence: (1) Plaintiff's 2004 and 2005 EEOC charges; (2) Linda Nichols's deposition testimony that females received disparate treatment working under Winn; (3) Fred Bosher's 1995 EEOC affidavit regarding a statement allegedly made by Esco before he became mayor; (4) Dr. William Truly's deposition testimony that he believes McNeill was the victim of sex discrimination; (5) a letter

8

Truly wrote in 2003; and (6) Plaintiff's allegation that she was singled out for a different interview process than male applicants.  Plaintiff's proffer, however, is insufficient to create a fact issue as to whether Defendants' legitimate, nondiscriminatory reason is false, and it fails to create a reasonable inference that Plaintiff's sex was a determinative factor in her non-selection. *Id.*

First, Plaintiff's 2004 EEOC complaint contains nothing more than her charge that she was not selected due to sex based discrimination and retaliation.  There are no facts alleged and no supporting affidavits.  The Fifth Circuit Court of Appeals has repeatedly "recognized that generalized testimony by an employee regarding [her] subjective belief" that she was discriminated against, "is insufficient to make an issue for the jury in the face of proof showing an adequate, nondiscriminatory reason for" the employment decision.  *Elliott v. Group Med. & Surgical Serv.*, 714 F.2d 556, 564 (5th Cir. 1983).

Plaintiff's 2005 EEOC charge is equally subjective and even less probative as it relates to the 2005 decision to terminate her employment, not the alleged failure to promote.  Moreover, Plaintiff's reference to her affidavit in support of the 2005 EEOC charge is irrelevant because it relates to her treatment by Defendant Winn *after* the City hired him for the subject position. Winn was the successful applicant for the Chief of Police position in 2004, not the decision-maker.  Winn's conduct after he was hired cannot demonstrate the City's intent in hiring him instead of Plaintiff.  *See Laxton v. Gap, Inc.*, 333 F.3d 572, 583 (5th Cir. 2003) (to demonstrate pretext, a comment must "be made by a person primarily responsible for the adverse employment action or by a person with influence or leverage over the formal decision-maker"); *see also Sarwal v. Principi*, 226 F. App'x 334, 336 (5th Cir. 2007); *Jones v. Robinson Prop. Group, L.P.*,

427 F.3d 987, 993 (5th Cir. 2005) ("When a person or persons with decision making authority

evinces racial animus that may constitute direct evidence of discrimination.").  Plaintiff's

reliance on Linda Nichols's testimony regarding Chief Winn's treatment of women *after* he was

hired is irrelevant to the failure to promote claim for the same reason.  *Id.*

Additionally, Fred Bosher's approximately ten-year-old EEOC affidavit regarding

statements by Esco is not competent summary judgment evidence regarding Defendants' motives

at the time Plaintiff was passed over for the Chief of Police position.  The statements contained

in the affidavit were made in 1995 (before Esco was the mayor) concerning the possibility of

Plaintiff's selection for the Assistant Chief of Police, a position for which McNeill was selected.

Esco's statements are not probative evidence regarding Plaintiff's non-selection for the Chief of

Police position in April of 2004.  *See Brauninger v. Motes*, No. 07-30228, 2007 WL 4467583, at

*5 (5th Cir. Dec. 20, 2007).

Moreover, Plaintiff has not demonstrated a sufficient link between Esco and the 2004

decision to hire Winn.  The undisputed record evidence demonstrates that the hiring of Winn

over Plaintiff was recommended by a selection committee.  Esco did not serve on that committee

(although he helped with interviews), and he testified during his deposition that the committee

made the decision.  The Canton Board of Alderman ultimately voted on the committee's

recommendation, and Esco had no vote.  In *Russell v. University of Texas of the Permian Basin*,

the plaintiff relied on discriminatory remarks made by the chair of a selection committee.  Even

though there was some suggestion that the chair "did [Plaintiff] in" regarding her non-selection

for the available position, the Fifth Circuit held that the discriminatory remarks were not

sufficient to avoid summary judgment because the plaintiff

10

> presented no competent summary judgment evidence that [the committee chair] exercised influence over any of the other decisionmakers . . ., namely, the other committee members . . . .  The six-person search committee unanimously selected Dr. Richardson as their choice to fill the tenure-track position. . . . Without any evidence that [the chair] influenced the committee, [the Court] cannot impute [the chair's] allegedly discriminatory animus to the committee's selection.

234 F. App'x 195, 2007 WL 1879157, at *6 (5th Cir. 2007).  Even if the Court could rely on the nearly ten-year-old statements attributed to Esco regarding a different employment decision, the record does not sufficiently demonstrate that Esco influenced the committee regarding the 2004 hiring decision.

Plaintiff next offers a letter authored by, and deposition testimony of, Dr. William Truly, a former alderman of the City of Canton who was a voting member of the board of aldermen at the time of Plaintiff's non-selection.  Neither the letter nor the testimony carry Plaintiff's burden.

Throughout her Response, Plaintiff places significant weight on a January 2003 letter Dr. Truly wrote to Mayor Esco complaining that Plaintiff suffered a de facto demotion within the department.  Significantly, Truly stated that the cause of the demotion was Plaintiff's support for the mayor's political opponent, not Plaintiff's sex.  Dr. Truly repeated this belief in his deposition, testifying, "It is a strict political move."  The letter regarding Plaintiff's employment prior to January 2003 simply does not support the allegation that she was not promoted in April 2004 because of her sex.

Truly's deposition testimony regarding the promotion decision is more relevant.  On that subject, he testified that in his opinion, based on the relative credentials of the two, the selection committee's nomination of Winn over McNeill was based on sex discrimination.  Nonetheless, Dr. Truly did not serve on the committee, and he candidly admitted that without speculating, he

11

has "no idea" what the selection committee considered in deciding to hire Winn.  "'Unsupported allegations or affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment.'" *Johnson v. Pointe Coupee Parish Police Jury*, No. 06-31230, 2008 WL 64659, at *3 (5th Cir. Jan. 7, 2008) (quoting *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985)); *see also Parker*, 2007 WL 2021928, at *1 ("[S]ummary judgment may be appropriate in cases where elusive concepts such as motive or intent are at issue, if the nonmoving party rests merely upon conclusory allegations, improbable inferences and unsupported speculation."). Thus, Dr. Truly's testimony is insufficient to create a fact issue regarding pretext.

Finally, Plaintiff's allegation that she was subjected to a different interview process than male applicants also constitutes speculation.  Plaintiff contends that she was singled out because more than half of the members of the selection committee were not present for her interview, Mayor Esco did not stay for the entire interview, and her interview was taped.  Plaintiff admits in her deposition, however, that she does not know how many selection committee members were present for the interviews of other applicants, including Winn, and she does not know whether any of the other interviews were recorded.  Moreover, Plaintiff has presented no record evidence regarding the number of committee members present for the interviews of other candidates or whether such interviews were recorded.  Plaintiff offers no additional record evidence on this point.  Thus, Plaintiff can only speculate that she was subjected to a different interview process, and as discussed above, "a plaintiff's assertion of pretext must rest upon sufficiently specific, substantive reasons beyond self-serving, subjective or speculative allegations." *Murphree*, 226

F. Supp. 2d at 835.  Plaintiff offers no additional support for her sex discrimination claim which is due to be dismissed.

ii.      Retaliation

Plaintiff also claims that she was not selected for the Chief of Police position in retaliation for "reporting a sexually hostile work place environment, instituting a successful sexual harassment suit in federal court and otherwise protecting her rights."  Plaintiff's Complaint at ¶ 19.

Pursuant to Title VII, it is "an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" Title VII.  42 U.S.C. § 2000e-3(a).  "There are three elements to a prima facie case of retaliation under Title VII: (1) that the plaintiff engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action."  *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471 (5th Cir. 2002).

Defendants concede the existence of elements one and two, but dispute the presence of a causal connection sufficient to establish a prima facie case of retaliation for Plaintiff's non-selection for the Chief of Police position.  Even assuming, however, that Plaintiff has established a sufficient causal connection, and therefore a prima facie case, Plaintiff's retaliation claim suffers from the same flaw as her discrimination claim.  Plaintiff has not presented sufficient evidence to create a fact issue as to whether Defendants' legitimate, nondiscriminatory

reason–their desire to hire an outsider–was pretext or to create a reasonable inference that

Plaintiff's non-selection was in retaliation for her participation in protected activities.

In addition to citing the insufficient evidence of pretext presented under her

discrimination claim (addressed above), Plaintiff supports her retaliation claim with the

speculative assertions of Linda Nichols.  Linda Nichols merely testified that she "felt" McNeill

was retaliated against because of her lawsuit and stated generally, "even from the very first

lawsuit, which I was not there, but being a citizen and living in Canton . . . you follow things

closely.  And it seemed to always be that whenever something of that nature is going on, there's

always some retaliation in some form."  Again, Plaintiff's assertion of pretext must rest upon

something beyond subjective or speculative allegations.  *Murphree*, 226 F. Supp. 2d at 835.

> b.  Retaliation Regarding Termination/Demotion from the Assistant
> Chief of Police Position

> i.  Exhaustion of Administrative Remedies

Defendants contend that Plaintiff failed to exhaust her administrative remedies as to her

demotion and termination claims.  First, it is not entirely clear which alleged acts form the basis

of Plaintiff's demotion claim.  As noted, Plaintiff repeatedly cites Dr. Truly's testimony regarding

the alleged de facto demotion prior to January 2003.  Elsewhere Plaintiff suggests facts occurring

after Defendant Winn was hired.  Defendants' memoranda do not distinguish between the two,

arguing instead that none of the demotion claims were reflected in an EEOC charge of

discrimination.  Although Plaintiff did not respond to this argument, Defendants' position may go

one step too far.

As an initial matter, the conduct alleged in Dr. Truly's letter occurred prior to the Plaintiff's 2004 EEOC charge and was not reflected in that charge.  Those allegations, to the extent they are part of this case,[3] are due to be dismissed for failure to exhaust administrative remedies.  *Femidaramola v. Lextron Corp.*, No. 3:05cv643, 2006 WL 2669065, at *4 (S.D. Miss. Sept. 18, 2006).

On the other hand, claims of a retaliatory demotion after the 2004 charge of discrimination may survive an exhaustion argument.  In *Gupta v. East Texas State University*, the Fifth Circuit held,  "[I]t is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge; the district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court."  654 F.2d 411, 414 (5th Cir. 1981).  For this same reason, Defendants' argument regarding the failure to exhaust the termination claim may not prevail.  Neither party has addressed *Gupta* or its viability following cases such as *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 127 S. Ct. 2162 (2007) and *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).  The Court does not need to decide this issue, however, because, as discussed

---

[3]It is difficult to determine from Plaintiff's submission whether she considers these acts to constitute evidence of animus or actionable employment actions.  Her response suggests the latter, as most of her support for the demotion claim relates to comments made by Dr. Truley regarding events that occurred before January 2003.  While it appears that Plaintiff now claims those acts are part of this case, they were not alleged in the Complaint.  Count I alleges discrimination based on sex and relates exclusively to the failure to promote in 2004.  Complaint at ¶ 19.  The retaliation claim found in Count II also relates to the failure to promote.  *Id.* at ¶ 22.  Count III alleges retaliation *after* the failure to promote in 2004 and could not relate to alleged conduct before January 2003.  *Id.* at ¶ 24.  Even if Plaintiff properly alleged these incidents in her 2004 EEOC charge and in her Complaint, they would still fail on motion for summary judgment because Truly's letter specifically states, and his deposition testimony confirms, that he believed Mayor Esco retaliated against Plaintiff as political payback, not sex based discrimination or retaliation for the specific protected activities alleged in the Complaint.

below, even assuming the Court has jurisdiction to consider these claims, they all fail upon consideration of their merits.

ii.    Demotion

Excluding those acts alleged in Truly's letter, the following factual predicates possibly fall within the proper scope of the Court's review: (1) McNeill's assignment to "duties below her station," including being asked to wash uniforms at one point; (2) McNeill's being "taken off her normal work shift to interfere intentionally with a class she was teaching at Hinds Community College;"[4] (3) the "trumping up" of charges against McNeill; and (4) McNeill's being "singled out for discipline for routine matters."  Even assuming that each of the listed allegations occurred after Plaintiff's 2004 EEOC charge, none of them can survive summary judgment as a permissible basis for a retaliation claim under Title VII.[5]

As to allegations three and four, although Plaintiff summarily mentions these items in both her Complaint and Response, Plaintiff merely offers her own conclusory statement that such events occurred and does not provide record evidence to support either allegation.  Plaintiff's failure to present the Court with examples of specific occasions in which McNeill was "singled out for discipline for routine matters" or was accused of trumped-up charges forecloses the Court's consideration of these accusations.  *See Fuentes v. Postmaster Gen. of USPS*, No. 07-

---

[4]Plaintiff does not raise this issue in the retaliation portion of her Response.  It does, however, appear elsewhere in her Response and should be considered with respect to her retaliation claim.

[5]In this section of her Response, Plaintiff again relies, almost exclusively, on Truly's letter and testimony regarding political retaliation *before* January 2003.  As stated, this evidence has no bearing on alleged retaliation after September 2004.  In fact, the alleged retaliator, Defendant Winn, was not even employed by the City when Truly made his comments.

10426, 2008 WL 64673, at *3 (5th Cir. Jan. 7, 2008) ("[U]nsubstantiated assertions are not competent summary judgment evidence.  The nonmovant is required to identify specific evidence in the record to articulate the precise manner in which that evidence supports his or her claim. The district courts are under no duty to sift through the record in search of evidence to support a party's opposition to summary judgment."  (internal citations and quotations omitted)).

Regarding predicate one, McNeill's assignment to duties below her station, it appears that Plaintiff supports this allegation with her claim that she was asked to wash uniforms.  Plaintiff testified during her deposition that on one occasion, Chief Winn "told [her] to get it [(uniforms)] cleaned up, that he wanted them cleaned.  He did not care how they got cleaned."  Exhibit A, part 1 to Defendants' Rebuttal in Support of Their Motion for Summary Judgment ("Defendants' Rebuttal") at 15.  Plaintiff decided to wash the uniforms herself because she "didn't know of any other way because it was between 100 and 200 uniforms."  *Id.*

The anti-retaliation provision of Title VII does not protect an individual from all retaliation.  In *Burlington Northern & Santa Fe Railway Co. v. White*, the United States Supreme Court explained that Title VII protects against retaliation that rises to the level of a materially adverse employment action.  126 S. Ct. 2405, 2414–15 (2006).  A materially adverse employment action exists if "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Id.* at 2415 (citation and internal quotations omitted).  In considering whether an employment action is materially adverse, "it is important to separate significant from trivial harms . . . .  An employee's decision to report

17

discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.*

Retaliatory work assignments can be actionable in some circumstances. *Id.* at 2416–17. Under the particular circumstances of this case, however, a *single* instance of being asked to make sure that uniforms get cleaned is not the type of employment action that would "dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.* at 2414–15. Plaintiff was not told to wash the uniforms herself, she was merely told to get them cleaned; Plaintiff decided to wash the uniforms herself because she could not think of any other way to do it. Exhibit A, part 1 to Defendants' Rebuttal at 15. Moreover, Plaintiff points out only one instance in which she washed uniforms. *Id.* Consequently, Plaintiff's allegations regarding the uniforms are not actionable as materially adverse employment actions.

Because the change in Plaintiff's work schedule interfered with Plaintiff's outside teaching commitment, allegation two arguably constitutes a materially adverse employment action under *Burlington*. *See* 126 S. Ct. at 2415 ("A schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school age children."); *see also Thomas v. Potter*, 202 F. App'x 118, 2006 WL 2929952, at *1 (7th Cir. Oct. 11, 2006). Even assuming Plaintiff satisfies *Burlington*, and that Plaintiff could make out a prima facie case of retaliation, Plaintiff makes no effort to rebut Defendants' legitimate, nondiscriminatory reason for the change or to establish that her schedule would not have been altered but for her 2004 EEOC Complaint. *See Strong v. Univ. Healthcare Sys.*, 482 F.3d 802, 806 (5th Cir. 2007) (concluding that after an employer state's a legitimate,

non-retaliatory reason for its action, the ultimate burden rests on the plaintiff to establish pretext under a "but for" standard).

Defendants assert that Plaintiff's schedule change was motivated by the legitimate, nondiscriminatory desire to provide more coverage because the City was understaffed at the time. Plaintiff admits in her deposition that the City was short on manpower at the time of her schedule modification and that the change resulted in more coverage "from the command standpoint." Exhibit A, part 2 to Defendants' Rebuttal at 1–3. Furthermore, Assistant Chief Coleman's schedule was also modified so that both he and McNeill were on duty during the time of Plaintiff's teaching obligation. When asked at her deposition upon what she bases her claim that Chief Winn changed her shift intentionally to interfere with her working at Hinds Community College, Plaintiff merely responded that she "let Chief Winn know about any part-time employment that [she] had when he first arrived. [She] let him know in writing and then he gave approval for [her] to teach at Hinds, and then he changed [her] hours where it interfered with that." *Id.* at 2. Plaintiff's subjective, speculative conclusions that she was retaliated against are simply insufficient to create a fact issue as to whether Defendant's legitimate, nondiscriminatory reason is false or to establish that her schedule would not have been changed but for the filing of her 2004 EEOC complaint. *Fuentes*, 2008 WL 64673, at *3.

### iii.    Termination

Plaintiff further claims that the termination of her employment was retaliatory. Defendants assert that McNeill has not established a prima facie case of retaliation because she cannot establish a causal connection between her September 24, 2004 EEOC charge and the termination of her employment on July 5, 2005. "A 'causal link' is established when the

19

evidence demonstrates that 'the employer's decision to terminate was based in part on knowledge of the employee's protected activity.'" *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 684 (5th Cir. 2001) (citing *Sherrod*, 132 F.3d at 1122). "Thus, to demonstrate the causal link required to establish a prima facie case, a plaintiff need not prove that his protected activity was the sole factor motivating the employment decision." *Williams v. Taco Bell Corp.*, 46 F. App'x 732, 2002 WL 1973807, at *4 (5th Cir. 2002) (unpublished table decision) (citing *Long v. Eastfield Coll.*, 88 F.3d 300, 305 n.4 (5th Cir. 1996)). "Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a *prima facie* case of retaliation." *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997). Nevertheless, "the mere fact that some adverse action is taken *after* an employee engages in some protected activity will not *always* be enough for a *prima facie* case." *Id.* at 1188 n.3.

In the present action, there was a delay of approximately eight and one half months between Plaintiff's EEOC charge regarding her non-selection for the Chief of Police position and the termination of her employment. Defendants argue that this delay precludes the existence of a causal connection in the present case. Even assuming Plaintiff could establish a prima facie case, however, which is not apparent from her submissions, Plaintiff has not offered sufficient evidence to rebut Defendants' legitimate, non-retaliatory reason for McNeill's termination: "Plaintiff was terminated for her refusal to work cooperatively with Chief Winn and others, and for failure to perform her duties." Defendants' Motion at 16.

Once an employer has stated a legitimate, non-retaliatory reason for its action, the burden shifts back to the Plaintiff to establish that the defendant's "stated reason for the adverse action

was merely a pretext for the real, retaliatory purpose." *Strong*, 482 F.3d at 806. Thus, the question becomes whether McNeill has put forth legally sufficient summary judgment evidence that she would not have been fired but for her 2004 EEOC charge (or inversely, that she would not have been fired but for Defendants' alleged retaliation). *Id.*

Plaintiff fails to address Defendants' proffered reason for terminating her employment and offers no proof that others outside the protected group were treated more favorably. *See Wallace*, 271 F.3d at 220 (explaining ways in which plaintiffs may meet their burden to demonstrate pretext). Instead, Plaintiff's sole response to Defendants' arguments regarding termination is to cite the ultimately irrelevant deposition testimony of two witnesses.

First, Plaintiff relies on testimony from Linda Nichols regarding a conversation that allegedly occurred between Mayor Fred Esco and former Chief of Police Luke Gordon. In her deposition, Nichols explains that in late 2002 or early 2003, Gordon told her about a conversation he had with Esco in which Esco purportedly told Gordon to get rid of McNeill.

Plaintiff never suggests that these comments are direct evidence of discrimination, and they would be too vague and remote in time to constitute such evidence. *See Brown v. CSC Logic, Inc*., 82 F.3d 651, 655–66 (5th Cir. 1996). To the extent the conversation is offered as circumstantial or additional evidence of retaliatory or sex based animus, the comments fail to defeat summary judgment. To be considered, remarks must "first, demonstrate discriminatory animus and, second, be made by a person primarily responsible for the adverse employment action or by a person with influence or leverage over the formal decisionmaker." *Laxton*, 333 F.3d at 582. These statements fail both prongs of this test.

Nichols's conclusions regarding the motive for firing Plaintiff are speculative because Gordon never said why the mayor wanted to terminate Plaintiff's employment.  *See* Exhibit B to Plaintiff's Response at 13–15, 20 ("[H]e went on to say that there are some people–and he said, '[t]he Mayor and some others'–to be exact–'that don't want to see Chief McNeill here."). Consequently, the statements do not demonstrate discriminatory animus.

In addition, the statements are attributed to Mayor Esco, while Defendant Winn is the party who recommended that the City terminate Plaintiff's employment.  The record evidence demonstrates that although Mayor Esco presided over the Board of Alderman meeting in which Plaintiff's employment was terminated and favored the termination, he did not have a vote on the decision to terminate.  More significantly, there is no record evidence demonstrating that he exercised leverage over the formal decisionmakers.  See *Russell*, 2007 WL 1879157, at *6 (affirming summary judgment and finding that plaintiff failed to prove chair of selection committee influenced committee members).[6]

In addition to Nichols's testimony, Plaintiff offers deposition testimony from Alderman Alice Scott stating that the vote to terminate McNeill was a surprise vote with little or no notice given to the board.  Though relevant to the procedure followed by the City in voting on McNeill's termination, Scott's statements do not provide evidence of any improper motive on the part of Defendants in terminating McNeill.  Similarly, they do not offer support for the proposition that Plaintiff would not have been terminated but for her protected activities.  In sum,

---

[6]It is at least worth noting that this alleged conversation occurred two to three years before the City terminated Plaintiff's employment.   Even if Esco was trying to influence the former Chief of Police (based on reasons not apparent in the record), the former chief was no longer employed when Plaintiff was terminated, and Plaintiff fails to direct the Court's attention to any evidence that Esco attempted to influence Winn.

Plaintiff has simply not put forth legally sufficient summary judgment evidence that she would not have been fired but for protected activity. Summary judgment is therefore appropriate as to Plaintiff's retaliatory discharge claim. *Strong*, 482 F.3d at 806.[7]

2.      *Due Process Claims*

Plaintiff asserts a claim under § 1983 for alleged due process violations related to the termination of her employment. To establish a "due process violation in the public employment context, the plaintiff must first show that she had a legally recognized property interest at stake." *Lollar v. Baker*, 196 F.3d 603, 607 (5th Cir. 1999).

> Where there is no express contract of employment, a valid claim of entitlement must be grounded in some other legal source, such as a state statute or local ordinance, or an implied contract. The Constitution, standing alone, confers no property right in continued employment. Rather, the sufficiency of the claim of entitlement must be decided by reference to state law.

*Harrison County Sch. Bd. v. Morreale*, 538 So. 2d 1196, 1200 (Miss. 1989); *see also Lollar*, 196 F.3d at 607 ("The Constitution does not create property interests; they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." (citation and internal quotations omitted)).

The Mississippi Supreme Court has "held that where there is no employment contract or where there is a contract which does not specify the term of the worker's employment, the relation may be terminated at will by either party." *Levens v. Campbell*, 733 So. 2d 753, 763 (Miss. 1999) (citing *Perry v. Sears, Roebuck & Co.*, 508 So. 2d 1086, 1087 (Miss. 1987)).

---

[7] Because the Court has concluded that Summary Judgement should be granted as to all of Plaintiff's Title VII/§ 1983 claims, it is unnecessary for the Court to consider Defendants' assertion that they are entitled to summary judgment as to Plaintiff's request for back pay, front pay, and reinstatement pursuant to the after-acquired evidence doctrine.

Moreover, Mississippi Code Annotated § 21-3-5 (2007) provides that appointed municipal employees in municipalities operating under a Code Charter, like the City of Canton, are at-will employees who "hold office at the pleasure of the governing authorities and may be discharged by such governing authorities at any time, either with or without cause."  Therefore, such employees ordinarily do not have any property interest in their continued employment.

In her Response, Plaintiff essentially admits that she did not have a written employment contract with the City of Canton, but instead claims that she had a statutorily created interest in her continued employment as a civil service employee under Mississippi Code Annotated §§ 21-31-21 and 21-31-23.  Although Plaintiff is correct in asserting that the Mississippi Code creates a property interest in the employment of civil service employees, *Burleson v. Hancock County Sheriff's Department Civil Service Commission*, 872 So. 2d 43, 49 (Miss. Ct. App. 2003), Plaintiff does not qualify as a civil service employee under the cited provisions.  The unrebutted record evidence establishes that the City of Canton has not adopted the civil service commission form of government and has never operated under a civil service system.  Thus, the Mississippi Code sections regarding civil service employees are inapplicable to employees of the City of Canton, and create no property interest in Plaintiff's continued employment with the City.  Consequently, Plaintiff's due process claims are dismissed.

3.      *State Law Claims*[8]

a.      Intentional Infliction of Emotional Distress

Defendants submit that Plaintiff's intentional infliction of emotional distress claim must

fail because the facts do not support a finding that Defendants subjected Plaintiff to extreme and

outrageous conduct.  As explained by the Mississippi Court of Appeals,

> In order for [a Plaintiff] to prevail on a claim of intentional infliction of emotional
> distress, he must prove [Defendant's] conduct to be so outrageous in character,
> and so extreme in degree, as to go beyond all possible bounds of decency, and to
> be regarded as atrocious, and utterly intolerable in a civilized community.  *Brown
> v. Inter-City Fed. Bank*, 738 So. 2d 262, 264 (Miss. Ct. App. 1999). Under our
> law, liability does not extend to mere insults, indignities, threats, annoyances,
> petty oppression, or other trivialities.  *Id.*  Furthermore, damages for intentional
> infliction of emotional distress are usually not recoverable in mere employment
> disputes.  *Id.*  "Only in the most unusual cases does the conduct move out of the
> realm of an ordinary employment dispute into the classification of extreme and
> outrageous, as required for the tort of intentional infliction of emotional distress."
> *Prunty v. Ark. Freightways, Inc.*, 16 F.3d 649, 654 (5th Cir. 1994).

*Raiola v. Chevron U.S.A., Inc.*, 872 So. 2d 79, 85 (Miss. Ct. App. 2004).  Moreover, "[i]n

general, causes of action for intentional infliction of emotional distress within the context of a

workplace environment are 'limited to cases involving a pattern of deliberate, repeated

harassment over a period of time.'" *Means v. B & G Enters., Inc.*, No. 1:04CV776, 2006 WL

2632568, at *11 (S.D. Miss. Sept. 13, 2006).  In analyzing an intentional infliction of emotional

distress claim it is also

> important to note that the conduct itself must be "extreme and outrageous."  "It has
> not been enough that the defendant has acted with an intent which is tortious or even
> criminal, or that he has intended to inflict emotional distress, or even that his conduct

---

[8] Because discovery has been completed, the case has been pending for approximately
two years, and the issues are not novel, the Court will exercise its supplemental jurisdiction
under 28 U.S.C. § 1367(a) to consider Plaintiff's state-law claims, despite the fact that the Court
has dismissed all of the causes of action over which it had original jurisdiction.

has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort."

*Dandridge v. Chromcraft Corp.*, 914 F. Supp. 1396, 1405 (N.D. Miss. 1996) (quoting *Burroughs v. FFP Operating Partners, L.P.*, 28 F.3d 543, 546 (5th Cir. 1994)).

In the present case, Plaintiff argues that Defendants acted in an extreme and outrageous manner when, despite the fact that she was a "long-time, loyal and hard-working" employee, they seriously curtailed her job duties so that she was "in essence merely overseeing the dog catcher" and was even required to wash uniforms at one point.  Plaintiff explains further that Defendants "continually and systematically took adverse action against [her], violating her rights."  Damages for intentional infliction of emotional distress, however, are usually not recoverable in mere employment disputes, such as disputes regarding the proper scope of an employee's job duties. *Raiola*, 872 So. 2d at 85.  Furthermore, the mere occurrence of an adverse employment action, such as termination, cannot constitute the basis for an intentional infliction of emotional distress claim.  *See Pipkin v. Piper Impact, Inc.*, 70 F. App'x 760, 764 (5th Cir. 2003) ("Losing a job is never pleasant, but it is far from outrageous in character, extreme in degree, and beyond all possible bounds of decency.").

Thus, even viewing the evidence in the light most favorable to Plaintiff, considering Mississippi law on the subject, and the high standard set by the Mississippi Supreme Court, the Court finds that Defendants' actions failed to rise to the level of "extreme and outrageous" conduct required to maintain an intentional infliction of emotional distress claim.  *See Cooper v. Fid. Nat'l Corp.*, No. Civ. A. 3:02CV1784, 2003 WL 25537751, at *4 (S.D. Miss. Mar. 31, 2003) ("The [p]laintiffs' contention, taken as true, that [defendant] instructed, directed, ordered,

and cajoled them into performing certain unlawful and unethical actions, fails to rise to the level of extreme and outrageous conduct."); *Jenkins v. City of Grenada, Miss.*, 813 F. Supp. 443, 446 (N.D. Miss. 1993) ("Meeting the requisite elements of a claim for intentional infliction of emotional distress is a tall order in Mississippi."); *Speed v. Scott*, 787 So. 2d 626, 630–31 (Miss. 2001) (holding that an employer's repeated references to plaintiff as a liar and a thief did not constitute a claim for intentional infliction of emotional distress); *Raiola*, 872 So. 2d at 85–86 (finding that plaintiff's claims that employer called him a thief and made remarks about his Italian heritage were not so extreme and outrageous as to justify redress); *Diamondhead Country Club & Prop. Ass'n v. Montjoy*, 820 So. 2d 676, 684 (Miss. Ct. App. 2000) (concluding that no reasonable and fairminded jury could find conduct sufficient to support a finding of intentional infliction of emotional distress when plaintiff's employer watched him pack his belongings in his office, stated that it was watching to make sure that plaintiff did not try to take anything belonging to the employer, and had the head of security escort plaintiff out of the building in front of other staff).

> b.      Negligent Infliction of Emotional Distress

"Under Mississippi law, proof of an intentional tort is required to circumvent [the] exclusive remedies available under workers' compensation law; allegations sounding in negligence are inadequate to avoid the exclusivity provision."  *Winters v. Cooper Lighting, Inc.*, No. 5:00-CV-(BR)(S), 2001 WL 1334197, at *1 (S.D. Miss. July 6, 2001) (citing MISS. CODE ANN. § 71-3-9).  In her Response to Defendants' motion, Plaintiff attempts to avoid the exclusivity of the Mississippi Workers' Compensation Act by arguing that "[t]he infliction of emotional distress that occurred negligently, occurred nonetheless as a result of the intentional

acts of Defendants" and that "McNeill's claims under this count arose from the retaliation she suffered, not the discrimination." The distinction Plaintiff suggests is inapposite, however, as Plaintiff seeks to recover under a negligence theory of law, and "allegations sounding in negligence are inadequate to avoid the exclusivity provision." *Id.*; *see also Woodson v. Miss. Space Servs./Computer Sci. Corp.*, No. 1:05cv426, 2007 WL 2012799, at *6 (S.D. Miss. July 6, 2007) (granting summary judgment on plaintiff's state law claim based on negligent infliction of emotional distress); *Berry v. Advance Am.*, No. 3:06CV348, 2007 WL 951590, at *3 (S.D. Miss. Mar. 27, 2007) (same); *Williams v. Lowe's Home Ctrs., Inc.*, No. CIVA 105CV111, 2007 WL 391567, at *4 (S.D. Miss. Jan. 31, 2007) (same); *Howard v. Hancock Med. Ctr.*, No. 1:05CV334, 2006 WL 3487109, at *7 (S.D. Miss. Dec. 1, 2006) (same); *Disney v. Horton*, No. CIV. A. 2:99-CV-0138, 2000 WL 490848, at *8 (N.D. Miss. Apr. 14, 2000) (same). Furthermore, "[a] claim for negligent infliction of emotional distress does not arise from acts of intentional discrimination." *Allen v. NPC Int'l, Inc.*, No. 1:95CV20, 1996 WL 407564, at *5 (N.D. Miss. June 10, 1996). Because Plaintiff was covered by workers' compensation insurance during her employment with the City of Canton, her negligent infliction of emotional distress claim must be dismissed as barred by the exclusive remedy provision of the Mississippi Workers' Compensation Act.

    B.    <u>Rule 56(f) Motion</u>

As part of her Response to Defendants' Motion for Summary Judgment, Plaintiff filed a Rule 56(f) Motion to Continue, requesting that the Court "order a continuance of the discovery deadline and/or compel Defendants to produce [certain] documents to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken so that [Plaintiff] may be

able to respond more fully to Defendants' motion."  Rule 56(f) of the Federal Rules of Civil

Procedure provides as follows:

> Should it appear from the affidavits of a party opposing the motion that the party
> cannot for reasons stated present by affidavit facts essential to justify the party's
> opposition, the court . . . may order a continuance to permit affidavits to be obtained
> or depositions to be taken or discovery to be had or may make such other order as is
> just.

"A non-movant seeking relief under Rule 56(f) must show: (1) why he needs additional

discovery and (2) how that discovery will create a genuine issue of material fact."  *Adams v.*

*Travelers Indem. Co. of Conn.*, 465 F.3d 156, 162 (5th Cir. 2006) (citing *Beattie v. Madison*

*County Sch. Dist.*, 254 F.3d 595, 605 (5th Cir. 2001)).  Furthermore, "[a] party cannot evade

summary judgment simply by arguing that additional discovery is needed, and may not simply

rely on vague assertions that additional discovery will produce needed, but unspecified facts."

*Id.* (internal citations and quotations omitted).  "Additionally, the non-movant must diligently

pursue relevant discovery—the trial court need not aid non-movants who have occasioned their

own predicament through sloth."  *Wichita Falls Office Assocs. v. Banc One Corp.*, 978 F.2d 915,

919 (5th Cir. 1993) (citing *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1267 (5th Cir.

1991)).

Here, Plaintiff seeks additional discovery regarding the remaining portions of files found

in Plaintiff's office *after* her termination, Exhibits T and U to Defendants' Motion for Summary

Judgment, and weekly reports McNeill allegedly provided to Chief Winn while working under

his supervision.  The requested information regarding Exhibits T and U relates to the

Defendants' after-acquired evidence theory.  Because the Court has found that Defendants'

Motion for Summary Judgment is due to be granted without consideration of any after-acquired

evidence, Plaintiff's request for additional discovery pertaining to the complete case files of Exhibits T and U is moot.  Regarding the weekly reports, Plaintiff's motion merely states: "McNeill also requires, and has been denied access to, all weekly reports she provided to . . . Chief Robert Winn which are relevant and necessary to the issues in Defendants' Motion for Summary Judgment."  Plaintiff's Response at ¶ 7.  Plaintiff may not, however, "simply rely on vague assertions that additional discovery will produce needed, but unspecified facts."  *Adams*, 465 F.3d at 162.  Consequently, Plaintiff's request for additional discovery regarding weekly reports is denied.

Finally, the record reflects that the Court has granted Plaintiff sufficient time to adequately conduct discovery.  Pursuant to a Scheduling Order entered on June 9, 2006, the discovery deadline in this case was set for December 7, 2006.  That deadline came and went with no written discovery having been propounded by the Plaintiff.  On December 8, 2006, the deadline was extended, allowing for discovery until April 16, 2007, and Plaintiff thereafter propounded her first discovery requests.  Another two extensions of the discovery deadline were then granted, making all discovery due by June 29, 2007.  On August 22, 2007, nearly two months after the thrice-extended discovery deadline, Plaintiff filed her Response and Rule 56(f) motion seeking reports she has known about since the suit was first filed.  It appears from Exhibit W to Plaintiff's Response that Plaintiff first attempted a good faith effort to obtain such documents was on August 14 and 15 of 2007 (two weeks after the final discovery deadline).  Plaintiff's motion is denied.

**IV.      Conclusion**

The Court has considered and rejected the remaining arguments raised in Plaintiff's submissions.  Accordingly, for the reasons stated herein, the Court grants Defendants' Motion for Summary Judgment and denies Plaintiff's Motion to Continue.

**SO ORDERED AND ADJUDGED** this the 29th day of January, 2008.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE